UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART DOUGLASS, JOHN MAXEY, MARY MARSH LINDE,<br><br>Plaintiffs,<br><br>v.<br><br>TRUCKEE SANITARY DISTRICT; a Public Corporation, BLAKE TRESAN, individually and in his official capacity; BRIAN SMART, individually and in his official capacity; and DOES 2-20 inclusive<br><br>Defendants. | No. 2:25-cv-01609 AC<br><br>ORDER |

  This case is before the undersigned for all purposes on the consent of the parties. ECF No. 18. Defendants filed a motion to dismiss this case. ECF No. 16. Plaintiffs opposed the motion (ECF No. 19), and defendants have replied (ECF No. 20). The matter came before the court for oral argument on October 29, 2025, with counsel for all parties present. For the reasons set forth below, defendants' motion to dismiss is GRANTED.

## I. Background

### A. The Complaint

  "Plaintiffs at all relevant times were the respective landowners of unimproved 70-acre parcels located in proximity to Glenshire/Devonshire, a small-lot residential subdivision in

1

the then-unincorporated area of southeast Nevada County, California, lying above the Truckee River within the sphere of influence of the community of Truckee, and which later became incorporated into the Town of Truckee." ECF No. 10 at 2. Defendant Truckee Sanitary District (TSD) is a local sanitary district which at all relevant times was responsible for wastewater collection in Truckee. Id. In the early 1980s, Glenshire/Devonshire ("G/D") came under a moratorium prohibiting continued wastewater treatment by on-site septic tanks. Id. In response, TSD sought and received eligibility for federal grant funding to sewer G/D lots and connect them to the Tahoe-Truckee Sanitation Agency (T-TSA) for treatment. Id. at 3-5. This septic tank moratorium and sewering order, at the time of its creation, "by its terms and purpose, did not apply to large-acreage parcels such as Plaintiffs' 70-acre uninhabited parcels." Id. at 3.

Through Resolution 86-114 from the Nevada County Local Agency Formation Commission (LAFCO), G/D was designated for annexation to TSD on the conditions that (1) *the affected territory was inhabited*, (2) that assessments could be charged to property owners on which a dwelling existed, *and* (3) for undeveloped parcels, the TSD connection charges would be paid upon the TSD's issuance of a sewer connection permit. Id. at 4 (emphasis added). Plaintiffs allege that TSD placed assessments, enforceable through liens, on their properties despite the facts that the properties were uninhabited and located outside the moratorium area for which LAFCO authorized assessments, and that plaintiffs had never applied for sewer connection permits. Id. at 4-5.

By Resolution 87-104 dated February 12, 1987, the TSD Board approved the assessment in the Amended Engineer's Report which the Board directed to exclude the Greenbelt Parcels of the G/D Residents Association, because the Board believed "that there was no reasonable prospect of being developed in any way that would utilize the subject sewer system improvements." Id. at 5. The Amended Engineer's Report divided the parcels to be assessed between the G/D lots and the "Outside" parcels including plaintiffs' and other large uninhabited lands. The Board of Directors by Resolution 87-104 "confirms and levies the individual assessment as stated in the Amended Engineer's Report." Id. The Amended Engineers Report and a Second Amended Report dated April 2, 1987, designated the lands, including plaintiffs'

2

properties, lying beyond the boundaries of the G/D subdivision as "Outside Parcels" because they were not eligible for any benefit of Federal Grant funds. Id.

Even though the terms of the resolutions and the engineers reports plainly and clearly excluded plaintiffs' lands, which were uninhabited and therefore expressly excluded from the sewer moratorium, plaintiffs were each charged assessments. Id. Plaintiffs claim they have each paid their respective assessments: plaintiff Linde in the amount of $107,379.94, Douglass in the amount of $103,801.44, and Maxey in the amount of $114,756. Id. at 5. According to the First Amended Complaint, plaintiffs paid these assessments even though the language of the resolution authorizing the assessment specifically did not apply to their uninhabited parcels. Although the FAC does not specify the dates that the payments were made, id., it is clear that they were payments of assessments that had been levied in 1987.[1]

In 2023, the lands at issue were rezoned as permanent open space which prohibits any future development, including connection to the TSD system. Id. at 5-6. Plaintiffs allege that when the rezoning was formalized in 2024, and they learned that no wastewater collection facilities had been built on or near their properties, plaintiff Douglass contacted TSD to demand an accounting and refund of the assessments previously levied against his land. Id. at 6. The TSD, including defendants Smart and Tresan as agents of TSD, denied plaintiffs' demand stating that the time to file a government claim had expired. Id. Plaintiffs Maxey and Linde later joined Douglass's demand along with an application to file a late claim, which was also denied. Id.

Plaintiffs filed this lawsuit on June 10, 2025. ECF No. 1. The operative First Amended Complaint (FAC) was filed on August 7, 2025. ECF No. 10. Plaintiffs allege that defendants intentionally violated the LAFCO order by levying assessments against their uninhabited parcels. Id. at 7. Plaintiffs also claim that defendants utilized an arbitrary, fraudulent and confiscatory computation of the unauthorized assessment and they increased plaintiffs' respective assessments without justification or notice. Id. Further, plaintiffs allege that no collection infrastructure was

---

[1] Plaintiffs' counsel confirmed at oral argument that all subject properties were sold by plaintiffs in the early 2000's, so even if payments were made by plaintiffs after 1987 any injury caused by those payment would have occurred at least 20 years ago.

ever planned or built on or near their parcels, therefore the annexation project did not include plaintiffs' lands. Id. at 8. The complaint seeks relief for various constitutional violations under 42 U.S.C. §1983, civil RICO violations, and violations of state law. Id. at 1.

### B. Motion to Dismiss

Defendants move to dismiss on several grounds, but one issue is dispositive: plaintiffs' claims are time-barred. Defendants also raise the issue of standing, and because standing is a jurisdictional matter, this is also addressed below. However, because the time bar makes it clear that plaintiffs' case cannot move forward, the court declines to address the additional grounds for dismissal raised by defendants.

## II. Analysis

### A. Plaintiffs Have Standing

Defendants filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); this type of motion challenges the legal sufficiency of a complaint. ECF No. 16 at 15; N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Within the motion, defendants argue that plaintiffs lack standing to bring this lawsuit because the plots of land at issue have all transferred ownership: one plot was sold to the Truckee Donner Land Trust in 2022, and the remainder were conveyed to another owner, "Canyon Springs" more than 15 years ago. Id. at 21. Plaintiffs argue that they do have standing because they were the actual payers of the allegedly unlawful assessment, and it is irrelevant who currently owns the land. ECF No. 19 at 20.

Article III of the Constitution limits federal judicial power to the resolution of "cases" and "controversies." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 465, 471 (1982). Constitutional standing is the threshold question in every case because it determines a court's power to entertain a matter. Warth v. Seldin, 422 U.S. 490, 498 (1975); Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed Cir. 2009) (citing Warth). The question of standing asks whether a litigant has made out a "case or controversy" within the meaning of Article III; federal court jurisdiction can be invoked only when a litigant has suffered some threatened or actual injury resulting from the putatively illegal action. Warth, 422 U.S. at

499; Polinsky v. MCA Inc., 680 F.2d 1286, 1288-89 (9th Cir. 1982) (citing Warth).

"Because standing pertains to a federal court's subject-matter jurisdiction under Article III, [the issue is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000).

Here, the court agrees with plaintiffs that as the payers of the assessments, which were allegedly unlawful at the time they were charged and paid, plaintiffs have suffered injury that is concrete, particularized, and actual. The harm is not speculative, as it occurred at the time of payment in or around 1987. Accordingly, the undersigned concludes that plaintiffs have standing, and the court has jurisdiction to hear this case. However, as explained next, the fact that plaintiffs have standing because they suffered an "injury in fact" by paying the unlawful assessments in or around 1987 lends support to defendants' argument that plaintiffs' claim accrued well over thirty years ago and is now barred by the applicable statutes of limitations.

### B. Plaintiffs' Claims Are Time-Barred

This case cannot proceed because plaintiffs' claims, which are based on assessments levied and paid in the late 1980s, are plainly time-barred. Although plaintiffs style their complaint as asserting multiple causes of action, each claim arises from the same core factual assertions: defendants levied an assessment against plaintiffs' properties in 1987, plaintiffs paid those assessments, and the assessments were unlawful at the time they were issued. ECF No. 10 at 10-26 (causes of action include (1) ultra vires assessment, (2) violation of due process by issuance of a fraudulent assessment without benefit to plaintiffs' land, (3) violation of the federal Takings Clause by collection of the unlawful assessment, (4) violation of the California state takings clause by collection of the unlawful assessment, and (5) Civil RICO violation by use of a

1  scheme to collect an unlawful assessment).

2      Plaintiffs' second and third claims allege federal constitutional violations and are brought
3  pursuant to 47 U.S.C. § 1983. ECF No. 10 at 2. Section 1983 does not contain a statute of
4  limitations. Without a federal limitations period, federal courts "apply the forum state's statute of
5  limitations for personal injury actions, along with the forum state's law regarding tolling,
6  including equitable tolling, except to the extent any of these laws is inconsistent with federal
7  law." Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014) (quoting
8  Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007)). Under the current statute,
9  which became effective on January 1, 2003, the applicable limitations period in California is two
10 years. Cal. Civ. P. Code § 335.1; see Canatella, 486 F.3d at 1132 (applying two-year statute of
11 limitations to the plaintiff's breach of privacy-and confidentiality-based claims). However, the
12 statute does not apply retroactively and any cause of action that arose prior to the statute's
13 enactment is subject to the previous one-year statute of limitations. Canatella, 486 F.3d at 1133.

14     "Although courts look to state law for the length of the limitations period, the time at
15 which a § 1983 claim accrues 'is a question of federal law[.]'" McDonough v. Smith, 588 U.S.
16 109 (2019) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)). Under federal law, "it is 'the
17 standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action,'
18 that is, when 'the plaintiff can file suit and obtain relief[.]'" Wallace, 549 U.S. at 388 (internal
19 quotations omitted). The Ninth Circuit has clarified that "a claim accrues not just when the
20 plaintiff experiences the injury, but when the plaintiff knew *or in the exercise of reasonable*
21 *diligence should have known* of the injury and the cause of that injury." Bonneau v. Centennial
22 Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012) (emphasis added, internal quotations
23 omitted).

24     Plaintiffs' Section 1983 claims assert that defendants "were on actual notice since at least .
25 . . April 7, 1987 . . . that the basis of assessment TSD was using assumed impermissible densities
26 under applicable zoning laws and was thus fraudulent and that the Bonds issued on that false
27 basis were also fraudulent." ECF No. 10 at 12. The gravamen of all of plaintiffs' claims is
28 simply that, at the time the assessments were levied in 1987, they were unlawful on their face

because plaintiffs' properties were undeveloped. Plaintiffs cannot plausibly argue that they had no reason to investigate the legality of the assessments at the time they were issued and paid. All of the information necessary to discovery of plaintiff's claims—the existence of the sewer moratorium, the various resolutions, the engineering reports, and the knowledge that plaintiffs' properties were uninhabited—existed in 1987 and was publicly accessible with reasonable diligence. Reasonable diligence required plaintiffs to understand the assessments at the time they paid them.

Plaintiffs argue that their "injury did not occur in 1987 or through the period of payments on the assessments unlawfully imposed, but upon learning [in fall of 2024], from TSD's records production, that not only did no benefit flow to Plaintiffs' parcels, but that TSD devised and carried out a scheme of ultra vires actions shrouded in deceit[.]" ECF No. 19 at 18. The court rejects this argument. Plaintiffs offer no explanation of how these public assessments were "shrouded in deceit," and such a theory conflicts with the facts that plaintiffs themselves present. The FAC plainly alleges that the assessments were unlawful at the time they were issued because they were intended only for parcels of inhabited land, and that this is clear from the relevant documents published at the time. ECF No. 10 at 3-4. Plaintiffs' conclusory allegations of a fraudulent scheme to conceal accordingly cannot support a later claim discovery date. If plaintiffs did not discover that the assessments were not intended for their land until 2024, it demonstrates only a lack of reasonable diligence on their part.

Moreover, the discovery that matters for purposes of claim accrual is the discovery of the *fact* of injury, not its extent. See Bibeau v. Pacific Northwest Research Foundation Inc., 188 F.3d 1105, 1108 (9th Cir. 1999). Accordingly, plaintiffs cannot rely on the allegedly delayed discovery in 2024 of the extent of their past injury to save claims based on assessments unlawfully levied decades previously. To the extent that plaintiffs' theory of timeliness suggests a continuing violation theory, an argument they do not expressly make, that doctrine is inapplicable because continuing impact does not cause a new claim to accrue. See Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001). And discovery of a new legal theory for relief does not restart the statute of limitations. See Lukovsky v. San Francisco, 535 F.3d 1044, 1049

(9th Cir. 2008) (a claim accrues upon awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong); accord Norgart v. Upjohn Co., 21 Cal. 4th 383, 397-98 (1999) (plaintiff "discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding."). Finally, in cases challenging a series of related government decisions, the cause of action accrues—and the limitations period begins to run—when the operative decision was made. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1059 (9th Cir. 2002). Later decisions regarding the same subject matter do not trigger a new statute of limitations where they are the inevitable consequence of an earlier decision. Id. at 1061. Here, the operative decision at the basis of all claims is the assessment of levies on plaintiff's former properties.

For all these reasons, the statute of limitations for plaintiff's Section 1983 claims began to run when they were injured decades ago by the wrongful assessments and payments. See Gregg v. Hawaii, Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017) (§ 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury). The 2023-2024 rezoning decision and related actions by defendants are not alleged to have caused any independent injury to plaintiffs or to give rise to any claim for relief. Accordingly, they are irrelevant to the statute of limitations analysis.

Plaintiffs' only other federal claim is brought under Civil RICO and is accordingly subject to a four-year statute of limitations. Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001). Civil RICO claims follow the "injury discovery" rule, meaning that limitations period begins to run when a plaintiff knows or should know of the injury that underlies the claim. Id. Constructive notice is sufficient to trigger the running of the limitations period. Id. "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir. 1988). Here, plaintiffs allege that "the predicate of the annexation, imposition, collection and retention of fraudulent liens

inextricably with TSD's refusal of Plaintiffs' refund demands contrary to its own Ordinances, to applicable law, and in the full light of Defendants' knowledge of both TSD's unlawful and deceptive assessment and of TSD's intentional failure to extend any benefit of the assessment to Plaintiffs' lands or to those similarly situated, as this scheme was and remains integral to TSD's regular way of conducting its ongoing business." ECF No. 10 at 16.  Again, plaintiffs allege that the assessments on their properties were unlawful on their face when they were issued in 1987. This is sufficient to establish plaintiffs' constructive knowledge of the underlying injury that would allow them to challenge the assessments at the time they were issued. ECF No. 10 at 4-5. The claim is therefore time-barred.

        C. The Court Declines to Exercise Supplemental Jurisdiction Over Other Claims

Federal jurisdiction in this case is predicated on the existence of a federal question, pursuant to 28 U.S.C. § 1331. ECF No. 10 at 2. As discussed above, it is clear that plaintiff's federal claims are time-barred. A district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction," subject to certain exceptions, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  "A district court may decline to exercise supplemental jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The general rule is "when federal claims are dismissed before trial ... pendent state claims should also be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992). Considering the early procedural posture of this case, as well as judicial economy, convenience, fairness, and comity, the court will exercise its discretion and decline to entertain supplemental jurisdiction over plaintiffs' remaining state causes of action. See 28 U.S.C. § 1367(c)(3); Religious Tech., 971 F.2d at 367-68. Accordingly, it is unnecessary for the court to address the timeliness of plaintiffs' putative state law claims or whether they are adequately pleaded.

        D. No Further Action in this Case is Warranted

Although leave to amend is generally to be granted with liberality, "[v]alid reasons for

denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (while leave to amend shall be freely given, the court does not have to allow futile amendments). Here, leave to amend would be futile because the time bar applicable to plaintiffs' federal claims cannot be cured by the pleading of additional facts.

### III.  Conclusion

For all the reasons explained above, defendants' motion to dismiss (ECF No. 16) is GRANTED.  Judgment shall be entered in favor of defendants and the case shall be CLOSED.

DATED: November 20, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

10